## NEW YORK COMMON PLEAS.

HEATH and others agt. THE OFFICERS OF THE NEW YORK GOLD EXCHANGE, and THE MEMBERS OF THE ARBITRATION COMMITTEE OF THE BOARD.

Assuming that any members of the *New York Gold Exchange*, personally assenting to the constitution and by-laws of the association, establish thereby a valid contract between them and the other members of the association, the only binding force or effect that the *seventh article* (which provides for settling claims and differences by the arbitration committee thereby appointed) has upon such members, is that it shall have the same force and effect as an *agreement in writing made by persons to submit to the decision of one or more arbitrators any controversy existing between them.*

By the Revised Statutes a party is permitted to *revoke* the powers of the arbitrators at any time before the cause is finally submitted to them for their decision.

The plaintiffs in this case had a right to revoke and annul, as they allege in their complaint they did, any power to arbitrate, they may have previously conferred upon either the Gold Exchange or the Arbitration Committee thereof.

Whether, therefore, they be regarded as members of the defendants' organization, as they claim they are in their original complaint, or as having resigned and ceased to be such members, as they allege in their supplemental complaint, they having revoked and annulled any contract of submission to arbitration they may have made, any action which the Gold Exchange or the Arbitration Committee thereof may take in the premises, will amount to nothing. The defendants cannot enforce any award or judgment that they may make or render; consequently the plaintiffs could not be affected or injured by it in any way, and are not entitled to a temporary injunction.

*Special Term, December*, 1869.

MOTION made to continue a preliminary injunction against the defendants, restraining the Arbitration Committee from acting on or adjusting certain claims for differences claimed to have arisen out of the transactions of the 24th of September last, in favor of Livermore & Co. The preliminary injunction was granted on a complaint setting forth Heath & Co. as being still members of the board, which attempted to work injury to their credit, and otherwise, by arbitrating on the claims against them, in which arbitration plaintiffs claimed that they could not have a fair and definite deter-

mination of their rights; and the injunction is asked to be continued on a supplemental complaint, setting forth that Heath & Co. have tendered their resignation as members of the Gold Exchange, and are therefore no longer subject to its rules or the action of its Arbitration Committee.

MARTIN and SMITH's, *for plaintiffs.*
BURRILL, DAVISON & BURRILL, *for defendants.*

LOEW, J. As the injunction which was issued in this action has been modified with the consent of the plaintiffs, so that the officers and members of the Gold Exchange and the Arbitration Committee thereof are now only enjoined and restrained from holding any arbitration in respect to the claims of W. F. Livermore & Co. against the plaintiffs, I shall only consider that point.

By article 7 of the constitution of the New York Gold Exchange—of which plaintiffs are, or were, members—it is provided as follows: "The Arbitration Committee shall consist of a chairman, to be elected annually by ballot and to serve for one year, and two members, to be appointed by the president on the 1st of every month, to serve for one month. It shall be the duty of said committee to take cognizance of and exercise jurisdiction over all claims and matters of difference between the members of the board, and their decision shall be final."

The precise effect of an arbitration clause like this, in the constitution of an unincorporated association like the Gold Exchange, upon persons who voluntarily become members thereof, and agree to submit to and abide by the constitution and by-laws of the same, has, I believe, never been judicially determined. Before the constitution and laws of such an association can have any binding force whatever upon a member thereof, which will be recognized and enforced by the courts, it must appear that such member personally assented to their provisions. (*Austin* agt. *Searing,* 14

*N. Y., page* 112). Assuming that the plaintiffs in this action assented to the constitution of the Gold Exchange in such a manner as to establish a valid contract between them and the other members of the association, the question arises what binding force or effect has this seventh article upon them ? In my opinion the most that can possibly be claimed for it is that it should have the same force and effect as an agreement in writing made by persons to submit to the decision of one or more arbitrators any controversy existing between them. If I am correct in this conclusion it will become necessary to ascertain what the law is in regard to an ordinary agreement to submit a matter in difference to arbitration.

For the reason that the enforcement of such agreements is deemed against public policy, and, as courts of justice are presumed to be better capable of administering and enforcing the real rights of the parties than mere private arbitrators, such agreements are not enforced either by a court of law or a court of equity. (2 *Story's Equity Jurisp.*, 1,457; 1 *Story's Equity Jurisp.*, 607; *Kill* agt. *Hollister*, 1 *Wilson*, 129; *Street* agt. *Rigby*, 6 *Vesey*, 815; *Agar* agt. *Macklaw*, 2 *Sim. & Stew.*, 418; *Milnes* agt. *Geery*, 14 *Vesey*, 400; *Thompson* agt. *Charnock*, 8 *Term*, 139; *Haggart* agt. *Morgan*, 5 *N. Y.*, 422). But after an award has been made it is conclusive on the parties, and may be enforced if it is unimpeached and unimpeachable. (2 *Story's Equity Jurisp.*, § 1,458).

By the Revised Statutes a party is permitted to revoke the powers of the arbitrators at any time before the cause is finally submitted for their decision. (2 *Rev. Stat.*, 544, § 23; *Curtis* agt. *Barnes*, 30 *Barb.*, 225; *Allen* agt. *Watson*, 16 *Johns.*, 205). This section of the Revised Statutes, it seems, applies to all cases of submission to arbitration. (*Bloomer* agt. *Sherman*, 2 *Edw.*, 452, *and see same case on appeal*, 5 *Paige*, 575). And the court of appeals in the case of *Austin* agt. *Searing* (*supra*), speaking of such volun-

tary associations, like the Gold Exchange, says: "To create a judicial tribunal is one of the functions of sovereign power; and, although parties may always make such tribunals for themselves in any specific case, by a submission to arbitration, yet the power is guarded by the most cautious rules. A contract that the parties will submit, confers no power on the arbitrator, and, even when there is an actual submission, it may be revoked at any time." In my opinion, therefore, the plaintiffs had a perfect right to revoke and annul—as they allege in their complaint they did—any power to arbitrate they may have previously conferred upon either the Gold Exchange or the arbitration committee thereof.

I do not understand that these views in anywise conflict with the case of *White* agt. *Brownell*, decided by this court, (3 *Abb. R. N. S.*, 218; 4 *Abb. R. N. S.*, 162). It was there decided that the open board of brokers had the right to suspend or expel a member upon a breach of the by-laws by him in respect to the fulfillment of a contract. And although the question of the effect of the arbitration in that case was the subject of discussion, yet the court, both at special and general term, refused to pass on that question. Now, whether the plaintiffs be regarded as members of the defendants' organization—as they claim they are in their original complaint—or as having resigned and ceased to be such members, as they allege in their supplemental complaint, they having revoked and annulled any contract of submission to arbitration they may have made, any action which the Gold Exchange or the arbitration committee thereof may take in the premises will amount to nothing. The defendants cannot enforce any award or judgment that they may make or render; and I apprehend that the plaintiffs could not be affected or injured by it in any way. Having come to this conclusion, it would seem that the plaintiffs are not entitled to a temporary injunction.

A court of equity should be extremely cautious in the

exercise of the power to issue an injunction, and should award it only in very clear cases. (*Woodward* agt. *Harris,* 2 *Barb.,* 439). It should not be granted in every case in which a party brings himself within the letter of section 219 of the Code; but the nature and extent of the injury which the plaintiff would suffer if the injunction were withheld should be taken into consideration. (*Bruce* agt. *Delaware and Hudson Canal Company,* 19 *Barb.,* 371; *Gallatin* agt. *Oriental Bank,* 16 *How. R.,* 253; *McCafferty* agt. *Glazier,* 10 *id.,* 475). The motion to continue the injunction should be denied, and the temporary injunction dissolved.