## SCHWAB v. E. G. POTTER CO. et al.

(Supreme Court, Appellate Division, First Department. December 11, 1908.)

1. CORPORATIONS (§ 393*)—EXERCISE OF POWERS—SCOPE OF JUDICIAL REGULATION.

The courts will not interfere with an act clearly within the powers of the board of directors of a corporation and of a majority of its stockholders, in the absence of fraud, since the business of the corporation must be conducted by itself and not by the courts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1574, 1575; Dec. Dig. § 393.*]

2. CORPORATIONS (§ 66*)—POWERS—SPLITTING CORPORATION INTO TWO CORPORATE ENTITIES.

A corporation, to increase its capital stock, has no power to evade the provisions of the statute relating thereto, by creating a new corporation at the expense of the old one, delivering a part of the old company's assets to the new corporation, capitalizing those assets at a fixed valuation, and receiving back all the shares of its stock, and minority stockholders may enjoin the act.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 66.*]

3. PLEADING (§ 9*)—CONCLUSIONS—CORPORATIONS—ACTION BY STOCKHOLDERS.

In an action by a minority stockholder to enjoin a corporation from transferring property to another corporation, an answer stating that it was necessary to sell the property at the valuation placed upon it, or even less, to conserve the interests of the stockholders, was insufficient as merely a conclusion of the pleader as to the necessity.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 29; Dec. Dig. § 9.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 189*)—ACTION BY STOCKHOLDERS TO ENJOIN CORPORATION
—DEFENSES—SUFFICIENCY.

    In an action by a minority stockholder to enjoin a corporation from transferring property to another corporation pursuant to a resolution of a majority of the stockholders, as an ultra vires act, a defense that the agreement to sell the property pursuant to the resolution was ratified and confirmed by stockholders representing over two-thirds of the capital stock was insufficient, since the suit was predicated upon the illegality of the original action of the stockholders, especially where it did not appear in the answer that any agreement had actually been made to sell the property pursuant to the resolution.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 189.*]

    Scott and McLaughlin, JJ., dissenting.

Appeal from Special Term.

Action by Joseph E. Schwab against the E. G. Potter Company and others. A demurrer to separate defenses in the answer was overruled, and plaintiff appeals. Reversed, and demurrer sustained, with leave to defendants to amend.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Henry H. Abbott, for appellant.
Robert S. Kristeller, for respondents.

PATTERSON, P. J. This appeal is from an interlocutory judgment overruling the plaintiff's demurrer to the second and third separate defenses contained in the joint answer of the defendants. Those defendants are the E. G. Potter Company, a corporation created and organized under the laws of the state of New York (but the nature of its business is not disclosed in the pleadings), and Ellis G. Potter, Edward F. Hull, and Hiram P. Freer, three of four directors of the company. The plaintiff is a shareholder in the Potter corporation, and he alleges in his complaint that he brings this action on behalf of himself and other stockholders, and its purpose is to procure a judgment restraining the defendant company, its directors and officers, from transferring the title and possession of a very valuable piece of real estate belonging to the corporation to another corporation presently to be referred to.

It appears by the complaint that a special meeting of the stockholders of the defendant corporation was held at its office on the 31st day of December, 1907, and at such meeting a resolution was passed, supported by a majority of the stockholders, which provided that the board of directors of the company be authorized, empowered, and directed to cause to be organized a corporation, at the expense of the defendant corporation, with a capital of $100,000, with the name of the Library Realty Company, or such other name as may be satisfactory to the officers of the defendant corporation, for the purpose of acquiring the real estate of the defendant corporation, No. 477 Fifth avenue, and to accept as the consideration for such conveyance all of the capital stock of the new corporation, and that the board of directors of the defendant corporation be authorized, empowered, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

directed to transfer to such new corporation such real estate, subject to existing mortgages of $350,000, and to receive in exchange for the equity in the real estate all of the capital stock of the new corporation. And then follows a provision that the board of directors of the defendant corporation are authorized, empowered, and directed to offer the $100,000 par value of stock of the new corporation for subscription to the stockholders of the defendant corporation on certain terms. It is further alleged in the complaint: That the capital stock of the defendant corporation consists of 3,500 shares of the par value of $100 each, of which 3,000 shares have been issued and 500 remain unissued; that the resolution above referred to was passed at the stockholders' meeting by a vote of 2,450 shares in favor and 550 shares opposed; that the plaintiff is an original incorporator of the defendant corporation and owns 100 shares of stock, for which he paid the sum of $10,000; that at the stockholders' meeting there was delivered to the several stockholders of the defendant corporation a statement of its assets and liabilities; that in the statement of assets, which was prepared by a firm of public accountants, the real property was valued at $498,000, which is $48,000 in excess of the sum for which it was proposed to sell the same to the new corporation; that the plaintiff has recently had the said property appraised by competent appraisers, and its value has been by them stated to be $525,000, and he believes that the property is actually of that value, which is $75,-000 in excess of the price at which it is proposed to convey it to the contemplated new corporation. Plaintiff then sets forth that he is unwilling to subscribe to stock in the new corporation, and that, if the proposed plan is carried into effect, he and those similarly situated will be deprived, as stockholders of the defendant corporation, of all right and interest in the real estate, "and the title to said real property will be wrongfully and illegally transferred from the E. G. Potter Company to the said proposed new corporation and to the stockholders thereof at a low and inadequate valuation, and that the completion of the plan proposed in the said resolution will deprive the plaintiff and the other minority stockholders who are unwilling to subscribe to the stock of said new corporation of their interest as stockholders of the E. G. Potter Company in said property by force and without adequate compensation." It is further alleged in the complaint that the carrying out of the plan referred to will compel the plaintiff and other dissenting stockholders to pay what is in effect a forced assessment of 33⅓ per cent. upon the par value of the capital stock owned by them respectively under penalty of being deprived of their proportionate interest in said real property for an arbitrarily fixed and inadequate valuation. And it is further alleged:

"That said plan is in all respects unjust and illegal and calculated to injuriously affect the rights of and damage the stockholders of said company who are unwilling or unable to subscribe and pay for the stock of said new corporation to be organized pursuant to the said resolution."

The defendants jointly answered the complaint and, after certain admissions and denials, set up for a further and separate defense that the agreement to sell the real estate of the company was entered into

only after mature deliberation by the directors and officers of the defendant company, and that in their judgment the price at which the property was to be sold was adequate and proper; and further, as a second separate defense, that it was necessary to sell the property at said sum of $450,000, or even less, if said price could not have been obtained, to conserve the interests of the stockholders of the defendant company; and further, as a third separate defense, that the agreement to sell the property pursuant to the resolution referred to in the complaint was ratified and confirmed by stockholders representing over two-thirds of the capital stock of the company.

The learned judge at Special Term, in determining the issue of law raised by the demurrer, did not pass upon the sufficiency of either of the separate defenses; but, searching the record for the first fault in pleading, he examined the complaint and reached the conclusion that it was defective, in that it did not state a cause of action, and therefore the demurrer was overruled. This conclusion was arrived at on the theory that the transaction set forth in the complaint was nothing nor less than a sale by the defendant corporation of some of its property, capital stock of another corporation to be received as the consideration, and that the acts of which the plaintiff complains were simply those of administration of the affairs of a corporation, with which the court would not interfere at the suit of a discontented minority stockholder.

If that were all that is involved in this action, according to the allegations of the complaint, there would be no difficulty in sustaining this interlocutory judgment, for it is beyond controversy that an act clearly within the powers of the board of directors of a corporation and of the majority of its stockholders will not be interfered with, in the absence of fraud, for the business of the corporation must be conducted by itself, and not by the courts. Gamble v. Queens Water Co., 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527, Continental Insurance Company v. Railroad Co., 103 App. Div. 282, 93 N. Y. Supp. 27, Id., 187 N. Y. 225, 79 N. E. 1026, Colby v. Equitable Trust Co., 124 App. Div. 262, 108 N. Y. Supp. 978, and other cases that might be cited, plainly indicate the established rule of law on that subject. But it is evident from the allegations of this complaint, and from the inferences that fairly may be drawn from such allegations, that what was in the contemplation of the directors and majority stockholders of the defendant corporation was not to have that corporation make an actual sale of the real estate to another corporation and receive shares of stock as the consideration therefor, but to resort to a device by which to increase its capital by dismembering itself and organizing another corporation of which it should be the only stockholder, and thus evade the provisions of the statute relating to the increase of the capital stock of a corporation. The defendant corporation, by the resolution, is authorized and directed to create a new corporation at the expense of the old one. What it is to do therefore is to be a corporate act done in its capacity as a corporation. Instead of increasing its capital stock in the manner provided by law, it is to separate its assets, deliver one portion of them to its own creature, capitalize that portion at a fixed valuation, and receive back all the shares of

stock issued by its creature; and there that transaction really ends. Affording an opportunity to the stockholders of the old corporation to subscribe to the stock of the new one is merely an offer to them to buy from the old corporation this new stock after it comes into the possession of the old corporation. I am unable to find authority for such action as that taken at this stockholders' meeting. What was done thereat, and what the directors of the defendant corporation were instructed to do, are things beyond the power of that corporation. A corporation cannot split itself up into two or more independent corporate entities. The minority stockholders are aggrieved, and, if the view I have taken of this transaction is the correct one, it cannot be contended successfully that the minority stockholders may not maintain a suit to enjoin the ultra vires acts of their corporation. It is no answer to say that the plaintiff and other minority stockholders are not injured. Manifestly, they may be injured.

This brings us to the consideration of the demurrer to the second and third separate defenses above adverted to. I think the demurrer was well taken. The second defense is that:

"It was necessary to sell the property at the said sum of $450,000, or even less, if said price could not have been obtained, to conserve the interests of the stockholders of the defendant corporation."

This statement of a defense presents no fact from which it could be inferred that a sale of the property was necessary. It is merely a conclusion of the pleader as to such necessity.

As to the third alleged separate defense, namely, that the agreement to sell the property pursuant to the resolution stated in the complaint was ratified and confirmed by stockholders representing over two-thirds of the capital stock of the company, that does not constitute a defense, for the plaintiff stands upon the illegality of the original action of the stockholders, and, if that is radically unlawful, the question of ratification is not involved in the controversy. Beside which, it is not made to appear in the answer that any agreement has actually been made to sell the property pursuant to the resolution.

I am of opinion that the interlocutory judgment should be reversed, with costs, and the demurrer to the separate defenses sustained, with costs, with leave to the defendants to amend their answer on payment of costs in this court and in the court below.

LAUGHLIN and HOUGHTON, JJ., concur.

SCOTT, J. (dissenting). The plaintiff appeals from an interlocutory judgment overruling his demurrer to two separate defenses contained in the answer. The court below, searching the record for the first error in pleading, held that the complaint did not state a cause of action, and, upon the principle that a bad answer is good enough for a bad complaint, overruled the demurrer. The sufficiency of the complaint is therefore called in question by this appeal. The complaint alleges that the defendant E. G. Potter Company is a domestic corporation with an authorized capital stock of $350,000, of which only $300,000 has been issued. The plaintiff is a minority stockholder. Among the assets of the company is a piece of real property in the city of

New York, upon which there is a mortgage of $350,000. On December 31, 1907, at a meeting of the stockholders of the corporation, a resolution was adopted by a stock vote; the holders of 2,450 shares voting in favor of it, and the owners of 550 shares (among whom was this plaintiff) voting against it. The resolution is as follows:

"Resolved: That the board of directors of this company be and they hereby are authorized, empowered and directed to cause to be organized a corporation at the expense of this company under the laws of the state of New York, with a capital stock of $100,000, with the name 'Library Realty Company,' or such other name as may be satisfactory to the officers of this company, for the purpose of acquiring the real estate of this company, No. 477 Fifth avenue, in consideration of the issuance to this company of all the capital stock of said new corporation. And further

"Resolved: That the board of directors be and they hereby are authorized, empowered and directed to transfer to said new corporation when formed the equity in the real estate of this company known as 477 Fifth avenue, subject to the existing mortgage thereon, amounting to $350,000, and to receive in exchange for said equity in said real estate all the capital stock of said new corporation to be formed, viz., capital stock of the par value of $100,000. And further

"Resolved: That the board of directors of this company be and they hereby are authorized, empowered and directed to cause the said $100,000 par value of stock of said new corporation when acquired by this company to be offered by proper notice to the stockholders of this company for subscription at par, each stockholder of this company to have the right to subscribe for an amount of the stock of the new corporation at par equal to one-third of the par value of said stockholder's holdings of this company, each stockholder not wishing to subscribe to have the right to assign his rights to so subscribe, and, in the event of failure of any stockholder or his assignee to subscribe, his rights to subscribe to terminate and the company have the right to receive subscriptions for all or any part of such unsubscribed-for stock in the new corporation from stockholders of this company or from outside parties, the time in which to subscribe to be limited as the directors may deem best, and the said subscriptions to be paid in cash as follows: 25 per cent. of the subscription on or before the day on which the right to subscribe terminates; 25 per cent. of the subscription five months after such date; 25 per cent. of the subscription ten months after such date; 25 per cent. of the subscription fourteen months after such date. And further

"Resolved: That the board of directors be and they hereby are authorized, empowered and directed to do or cause to be done all acts that may be necessary, convenient or desirable in order to carry out the foregoing resolutions and to properly safeguard the rights of this company and of the subscribers to the stock of the new company."

The plaintiff alleges that the real estate in question is carried on the books of the corporation at a valuation of $498,000 or $48,000 more than the price at which it is proposed to sell it, and that he has been informed by competent and reputable real estate dealers that said property is worth $525,000 or $75,000 more than it is proposed to sell it for. It is not alleged that the defendant corporation is insolvent, or that it is other than a solvent going concern. The relief sought is that the defendants be restrained from carrying out the proposed sale, which is alleged to be favored by the directors of the corporation, a majority of whom have expressed their intention to carry it out, unless restrained. The plaintiff professes to see in the proposed plan and method of sale a covert attempt to levy indirectly upon his stock an assessment under penalty of losing a proportionate share of his interest in the assets of the company. We do not so understand it. On

the contrary we find nothing more in the proposed plan than a purpose to sell the real estate of the corporation for $100,000 in cash, with an equal opportunity to each stockholder to participate in the purchase, if he desires to do so, in the proportion in which he holds stock in the defendant corporation. If the proposed sale were to be one outright for the sum of $100,000 in cash, it would be perfectly plain that the complaint does not state sufficient facts to justify the interposition of the court. As has been said, there is no allegation of insolvency, it does not appear that the sale of the real estate will prevent the corporation from pursuing its usual business, and there is no allegation of fraud. All that is charged is that the price is inadequate, if, indeed, the vague and uncertain allegation of the complaint can fairly be said to be an allegation of inadequacy. But mere inadequacy of price, uncoupled with fraud or ultra vires, or unless it is so apparent as to compel the inference of fraud, is not sufficient to justify the court in interfering with the action of the directors and the majority stockholders. Gamble v. Queens County Water Co., 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527; Continental Ins. Co. v. N. Y. & Harlem R. R. Co., 103 App. Div. 282, 93 N. Y. Supp. 27; Id., 187 N. Y. 225, 79 N. E. 1026; Hennessy v. Muhleman, 40 App. Div 175, 57 N. Y. Supp. 854; Colby v. Equitable Trust Co., 124 App. Div. 262, 108 N. Y. Supp. 978.

We think that it may therefore be safely said that, if the proposition had been to sell the real estate to some stranger for $100,000 in cash, the insufficiency of the allegations of the complaint to support the demand for an injunction to prevent the sale would be so obvious that no debatable question would be presented. Such a sale would not waste the assets of the corporation, or lessen the value of plaintiff's interest in these assets. It would simply transform an item of real estate assets to one of cash assets. Precisely this result will be arrived at by carrying out the plan approved by the directors and stockholders. The corporation will part with this particular piece of real property, and in exchange therefor will receive $100,000 in cash, so that when the transaction is completed the assets represented by the capital stock will be of precisely the same value, and will consist of precisely the same class of property that would be the case if the real estate had been sold outright to a stranger. So the plaintiff will be left in the same position, and his stock will be of the same value, if the plan be carried out, as it would be in case of an outright sale. The method devised for bringing about this result seems to us to be not only unobjectionable, but really one very advantageous to the present stockholders. It may be that the real estate has a considerable prospective value, the advantage of which would be lost to the present stockholders by an outright sale to a stranger. By the proposed plan each stockholder is afforded an opportunity to become a purchaser and to participate in the prospective increase in value, but he is under no obligation so to do. If he declines, he will be in no worse position than he would be if the property were to be sold outright. Indeed, so far as concerns the value of his stock and the assets represented by it, he will be in precisely the same position. If he thinks that the property is now worth more than it is proposed to sell it for, or that it will

presently increase in value, he can participate proportionately in the expected enhancement in value. We find nothing alleged which is unfair to the minority stockholders, or beyond the power of the corporation, or which implies fraud or bad faith on the part of the directors and the majority stockholders.

The judgment appealed from should therefore be affirmed, with costs.

McLAUGHLIN, J., concurs.